## Case No. 17,656.

In re WILEY.

[4 Biss. 214.] [1]

District Court, D. Indiana. May, 1868.

PARTNERSHIP—INDIVIDUAL DEBTS—DISTRIBUTION—PROPERTY TRANSFERRED TO PARTNER.

1. As a general rule, partnership property must first go to satisfy partnership debts, in preference to separate debts due by a partner.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. When property once belonging to a partnership. has, by a bona fide contract, ceased to be partnership property, and become the separate property of one of the partners. who afterward becomes a bankrupt, the partnership creditors are not entitled to any preference over the bankrupt's individual creditors, in relation to such property.

3. Quære. whether in such a' case, the individual creditors of the bankrupt are not entitled to the preference?

[In the matter of William H. Wiley. a bankrupt.]

McDONALD, District Judge. In this case, Samuel H. Burns has filed a petition, the object of which is to have certain property applied to the payment of partnership debts of the bankrupt. The petition is sworn to; and the case made by it is as follows: In 1866, and up to the 25th of October of that year, Burns and the bankrupt were in partnership in the saw-mill business; and, as such partners, they contracted debts to the amount of one thousand two hundred and twenty-eight dollars and sixty-two cents, which have never been paid. On that day they dissolved their partnership. The terms of their dissolution appear in a written agreement. a copy of which is filed with the petition. By that agreement Burns sold to Wiley all the partnership property for seven hundred and fifty dollars; and in consideration thereof, Wiley engaged to pay all the partnership debts. On the 9th of August. 1867, Wiley was adjudged a bankrupt by this court. In his schedule, he included the said partnership debts and said partnership property, consisting of a saw-mill and its appurtenances. These have been sold for one thousand two hundred dollars, by his assignee, in whose hands the money now is for distribution. The debts proved in the bankruptcy proceeding include divers individual debts owing by Wiley, as well as said one thousand two hundred and twenty-eight dollars and sixty-two cents of partnership debts.

The petition claims that, under these circumstances. Burns has a legal and equitable right to have the proceeds of said partnership property applied to the payment of said partnership debts; and he prays for an order of the court to that effect. In this case, if Burns has any such rights as he insists on. I think it clear that he could only have them enforced by a bill in chancery. But waiving this objection to the form of proceeding, has Burns any such right as he claims?

It appears to me plain enough that the saw-mill and its appurtenances have not been partnership property at any time since the 25th of October. 1866. And, in that view it should seem strange that the proceeds of their sale made since August 9th. 1867. ought to take the course in the distribution which by law partnership assets must take.

It is well settled that where a partner is liable for partnership debts. and at the same time owes individual debts. the partnership debts must first be paid out of the partnership property, and the individual debts out of the individual property of the debtor. McCulloh v. Dashiell's Adm'r. 1 Har. & G. 96; s. c. 1 Am. Lead. Cas. 457, 469, etc. But how can this rule apply to the point in question, so as to favor Burns, unless the saw-mill with its appurtenances was, at the time of the adjudication of bankruptcy, partnership property?

Counsel for the petitioner have referred, in support of their case, to the cases of Deveau v. Fowler, 2 Paige, 400; Topliff v. Vail, Har. (Mich.) 340; and Wildes v. Chapman, 4 Edw. Ch. 669. These cases all seem to proceed on the authority of a decision of Chancellor Jones, made in June, 1827—a decision, I believe, not in print. The only authority for its authenticity is a reporter's note; and what the decision was, is therefore, not very certain. The reasoning of the cases above named does not seem to me conclusive; and I should be loth to adopt it. If even, however, it is right, the cases are not precisely like the present. In all three of them a fraud is directly charged on the partner purchasing out his co-partner; and in one of them he had expressly promised to apply the partnership property purchased by him to the payment of the partnership debts. But in the case at bar there is no charge of fraud against any one: and there was no promise by Wiley to pay the partnership liabilities with the partnership property. In no view of these cases, therefore, do I feel bound to apply the principle decided by them to the case under consideration.

There are several English cases that seem strongly opposed to the claim of the petitioner. Ex parte Ruffin, 6 Ves. 119, is, so far as I can see, a case exactly like the present. One partner had purchased all the effects of the firm from his co-partner, and had promised the latter to pay all partnership debts. Afterwards he became bankrupt; and thereupon it was urged that the partnership effects ought first to go to pay the partnership debts. The chanceller decided that, as the transaction between the partners was bona fide. the property in question ceased to be partnership property at the moment of its sale to the purchasing partner; that thenceforth it became and was his individual property, and primarily liable for the payment of his individual debts: and that his promise to pay the partnership debts created a merely personal liability to the promisee, and could not operate as any kind of lien on said property. Ex parte Fell. 10 Ves. 347, and Ex parte Williams. 11 Ves. 3, are decisions to the same effect. They appear to be well considered. and I am disposed to follow them. It is said, indeed, by Chancellor Walworth, in the case of Deveau v. Fowler, supra, that "several questions of this kind have recently arisen in England. But as the decisions appear to have turned on the construction of a particular provision in the bankrupt law giving the property to the creditors of such person as should be the visible owner,

I do not consider it necessary to notice them particularly." The English cases cited above did not "turn on the construction of a particular provision of" the English bankrupt law. The provision alluded to is found in the act of Jac. I. c. 19, § 11, which reciting "that it often falls out, that many persons before they become bankrupt, convey their goods to other men upon good consideration, yet still keep the same. and are reputed the owners thereof, and dispose of the same as their own," enacts: "That if any person, at such time he shall become a bankrupt, shall, by the consent and permission of the true owner and proprietary, have in his possession, order, and disposition, any goods or chattels, whereof he shall be reputed owner, and take upon him the sale, alteration, or disposition, as owner, the commissioner shall have power to dispose and sell the same for the benefit of the creditors seeking relief under the commission, as fully as any other part of the estate of the bankrupt." The sole object of this statute evidently was to render sales by an insolvent debtor of goods and chattels, not accompanied by the delivery of possession, conclusive evidence of fraud as to his creditors—in other words to hold property found in his possession when he becomes a bankrupt absolutely liable to go into the assets, for the benefit of creditors. The statute of 27 Jac. I. therefore, only applies to fraudulent sales by the bankrupt, and makes the retention of possession of the goods sold conclusive evidence of fraud. But the cases above cited from Vesey's Reports were not cases of sales by the bankrupts, but sales to them. Nor was there any question of fraud touching them. It is not, then, correct to say that they "turned" on the construction of the English statute. The truth is, they turned on exactly the same considerations on which the present case must turn—namely, that a sale by a partner of his interest in the partnership property to his co-partner, divests such property of its partnership character and equities, and makes it to all intents and purposes individual property, liable to the payment of the debts of the bankrupt owner. That this should be the result may be argued (as it was in those English cases by the lord chancellor) from the fact that, in cases like the present, the purchasing partner becomes the ostensible owner of all the property formerly belonging to the firm. As such sole owner, he carries on the business previously carried on by the firm. Men deal with him as sole owner. His ostensible ownership gives him credit. And if, when upon this credit, he becomes indebted and turns bankrupt. it should be urged by his old partner that the property once belonging to the partnership ought first to go to pay old partnership debts, it may well be answered that such a course would be a fraud on the creditors of the bankrupt, who obtained his credit on this very property. On such reasoning as this were the cases in Vesey decid-

ed; and deeming it sound, I decide the present case as those were decided—against the prayer of the petitioner. Indeed the petitioner may well deem himself fortunate, if the individual creditors of the bankrupt do not apply for an order directing that the money arising from the sale of the saw-mill and its appurtenances shall be first applied to the payment of the bankrupt's individual debts before and in preference to the partnership debts. In view of the 36th section of our bankrupt law [of 1867 (14 Stat. 534)], it might be troublesome to resist such an application.

The petition is dismissed at the costs of the petitioner.

Consult In re Bradley [Case No. 1.772]; In re Knight [Id. 7,880], and notes.—Reporter.